[No. 59428-7.   En Banc.   June 3, 1993.]

SHIRLEY Y. LOMBARDO, *Appellant*, v. HARLAN
PIERSON, ET AL, *Respondents*.

*Horton, Wilkins, Faurholt & Connor* and *Harvey Faurholt*, for appellant.

*Sirianni & Youtz* and *Stephen J. Sirianni*, for respondents.

DURHAM, J. — Appellant Shirley Lombardo brought this action against respondent Ticor Title Insurance Company (Ticor) and various other parties for failing to disclose a document uncovered during a title search conducted prior to the purchase of her farm. The document, entitled "Agreement to Retain Land in Irrigable Status", alluded to potential seepage problems and purported to be a covenant running with the land. The trial court granted Ticor's CR 12(b)(6) motion dismissing the title company because the document did not affect title, or otherwise encumber the property. We affirm.

The parties are in general agreement as to the facts. In April 1985, appellant Shirley Lombardo purchased a farm, consisting of approximately 100 acres, in Franklin County, Washington, from Harlan and Karen (Hill) Pierson. The land was located within the Columbia Basin Project. A title insurance policy was issued by Ticor with Lombardo being the named insured.

Lombardo filed a complaint against Ticor and other various parties on December 18, 1989. The complaint alleged that the property had become unsuitable for farming due to seepage conditions. According to Lombardo, Ticor intentionally or negligently omitted a document from the title insurance policy's exceptions list which was designated "Agreement to Retain Land in Irrigable Status" (hereinafter Agreement to Retain Land). This document was executed in June 1982 between Vaughn and Linda Morgan (the owners of the farm at that time), the United States Department of the Interior Federal Bureau of Reclamation, and the South Columbia Basin Irrigation District. Although the record is unclear as to the exact function of this document, it appears to have been precipitated by an alteration to the Columbia Basin Project.

One result of this alteration was to raise the water table for the Lombardo farm, thereby causing the seepage problem. The owners of the farm in 1982, the Morgans, agreed to accept "lieu lands" from the federal government as compensation for the seepage problem. They received the lieu land, which was located in Grant County, and retained ownership of the farm currently owned by Lombardo. According to the complaint, Lombardo became aware of the Agreement to Retain Land only after seepage began to affect her farm.

The Agreement to Retain Land refers to potential seepage problems on the Lombardo farm, but notes that the landowner wishes to maintain the property's irrigable classification. As such, the document provides that the federal government shall maintain the irrigable status of the land, and in return, the landowner will pay irrigation assessments regardless of "whether . . . the said land continues to be suitable for irrigation development." Exhibit 1 (deposition of Warren). The document further states that the landowner acknowledges the federal government's determination that construction of drainage works is not currently feasible, and that a drainage system might be constructed in the future if federal criteria are altered. The document purports to be a covenant running with the land, and "shall be binding on the heirs, divisees, successors, and assigns of the landowner". Exhibit 1 (deposition of Warren).

A highlighted map of the farm which was appended to the Agreement to Retain Land reveals that almost half the acreage (49.2 acres) is "forecast to become wet and [has] been determined infeasible to drain under present project criteria." Clerk's Papers (CP), at 160. Another 2.7 acres are "[f]ormerly irrigable lands . . . which have no water allotment because they were determined infeasible to drain." CP, at 160. The entire Agreement to Retain Land, including the map, was properly filed with the Franklin County Auditor's office.

Ticor admits that they discovered this document during the title search. According to the deposition of the title

examiner, Sharon Warren, she reviewed the Agreement to Retain Land document. The document was not included in the preliminary title commitment or the final policy because it was either covered by existing exceptions or a document not affecting title. William L. Hames, the attorney who closed the sale for Lombardo, did not perform any independent title search. Instead, he relied upon the search reported by Ticor. In an affidavit, Hames testified that reliance on the title company search is the standard of care for attorneys closing real estate deals. In her deposition, Warren stated that attorneys can rely upon the title report for anything that "affects the title". Deposition of Warren, at 7. Warren also testified that she did not expect attorneys to perform independent title searches.

Following the Warren deposition, Lombardo filed a motion for summary judgment against Ticor, arguing that the insurance company failed in its duty to schedule the Agreement to Retain Land as an exception to the policy. Soon after, Ticor filed the CR 12(b)(6) motion which is the subject of this appeal. The motion averred that Ticor had no duty to disclose documents produced through a title search which do not affect title.

In a memorandum decision, Judge Dennis D. Yule of the Franklin County Superior Court denied Lombardo's motion for summary judgment and granted Ticor's CR 12(b)(6) motion. The trial court acknowledged that the question of whether a title insurer has a duty to disclose documents affecting title is still an open one in this state. Nonetheless, such a duty was not implicated in this case because "[t]he agreement does not constitute an encumbrance on the title to the property within the coverage provisions of the policy." CP, at 189-90. The trial court stated that "[w]hile [the seepage] condition may well affect the property's use and, therefore, its value, it does not affect its title and is beyond the responsibility undertaken by the title company." CP, at 190. The only true burden contained in the Agreement to Retain Land, the provision for continuing irrigation assessments, was already covered by the first exception to the Ticor

policy.[1] With the approval of the trial court, Lombardo immediately appealed the CR 12(b)(6) ruling dismissing Ticor from the suit. The Court of Appeals certified the case to this court pursuant to RCW 2.06.030(d), and we accepted certification.[2]

## DUTY TO DISCLOSE

Whether a title insurance company has a duty to disclose documents affecting title which were discovered in a title search is an issue that has been presented to this court on three separate occasions. *Klickman v. Title Guar. Co.*, 105 Wn.2d 526, 716 P.2d 840 (1986); *Transamerica Title Ins. Co. v. Johnson*, 103 Wn.2d 409, 693 P.2d 697 (1985); *Shotwell v. Transamerica Title Ins. Co.*, 91 Wn.2d 161, 588 P.2d 208 (1978). We have never answered this question, however, because each of the above cases was properly decided on alternate grounds. Similarly, because the document relied upon in the current case does not affect title, we must "once again reserve the broad question of the title insurance company's duty to search and disclose [documents affecting title] if reliance is shown." *Johnson*, 103 Wn.2d at 415.

No matter how one reads the Agreement to Retain Land, it cannot be said to create (or even mention) any covenant or easement relating to the seepage condition. The only legal consequence of the document is a continuing obligation to pay irrigation assessments. This assessment covenant falls squarely within the first exception listed on the Ticor title insurance policy. Moreover, the general references within the document that the land might be subject to future seepage are not relevant to the question of title. Although seepage

---

[1] The exception states: "[t]his land is included within the South Columbia Basin Irrigation District and is subject to laws of the United States and the State of Washington relative to the Columbia Basin Project, and is liable for further assessments, if any, levied by said District." Exhibit 4 (deposition of Warren).

[2] In granting Ticor's CR 12(b)(6) motion, the trial court considered numerous affidavits and other matters outside of the pleadings. As a result, the trial court's decision should be reviewed as though it were a motion for summary judgment under CR 56. *Gain v. Carroll Mill Co.*, 114 Wn.2d 254, 256 n.1, 787 P.2d 553 (1990); *St. Yves v. Mid State Bank*, 111 Wn.2d 374, 377, 757 P.2d 1384 (1988).

lowers the value of the farm and limits its beneficial uses, there is nothing in the document suggesting that this problem is other than a natural condition like rocky soil or a steep slope. In short, other than the excepted irrigation assessments, the Agreement to Retain Land does not affect title to the Lombardo farm.[3]

Nonetheless, Lombardo argues that the duty to search and disclose should not apply only to documents affecting title, but to "all matters affecting the property that are of 'public record'." Brief of Appellant, at 27. In this case, Ticor found a document "of critical importance" to Lombardo's decision on whether to purchase the land and failed to disclose it. Brief of Appellant, at 19. According to Lombardo, had Ticor simply chosen to photocopy the five pages of the Agreement to Retain Land in Irrigable Status, she would have been spared the financial disaster of purchasing the farm.

■ Lombardo fails to cite any cases adopting the proposed broad rule that a title company must disclose all recorded documents, regardless of whether they implicate title. In fact, in *Klickman v. Title Guaranty Co.*, we decided this issue to the contrary. In that case, the vendor of property sought to recover from his title insurer for failing to disclose a document requiring him to share the proceeds of a sale with a third party. We did not reach the duty to disclose question because:

> Put simply, the agreement here is not a title defect because it does not affect title. The agreement merely gives Herman Klickman a lien on one-third of the *proceeds* derived from a sale of the property in question. It does not give Herman Klickman any interest in the property, nor does it give him the right to disturb the buyers in their possession of the property. In short, the buyers could not possibly be affected by the terms of the agreement.

---

[3]Lombardo·is correct that any seepage covenant would not fall within the Ticor insurance policy's general "water rights" exception. This exception covers "[w]ater rights or matters relating thereto". Exhibit 4, schedule B (deposition of Warren). Construing the policy in favor of the insured, *Shotwell*, at 167, the exemption likely refers to conventional water rights (*i.e.*, the right to beneficial uses of water) rather than abnormal seepage conditions.

105 Wn.2d at 528-29. As such, there was no basis for imposing on the title insurance company a duty to include documents which do not affect the buyer's title to the property. 105 Wn.2d at 529.

Numerous other courts have also found that a duty to search and disclose should not extend beyond documents which affect title. For example, in *Roscoe v. U.S. Life Title Insurance Co.*, 105 N.M. 589, 734 P.2d 1272 (1987), the court held that the title company violated no duty in its failure to disclose a balloon payment contained in the underlying real estate mortgage. It was not necessary for the insurer to search beyond what was required for the title insurance — *i.e.*, documents affecting title. 105 N.M. at 591. Likewise, in *Devlin v. Bowden*, 97 N.M. 547, 551, 641 P.2d 1094 (Ct. App. 1982), the court held that a title insurer had no duty to search for a matter exempted from the coverage of the policy because the "law does not require a useless act".

■ Even though the Agreement to Retain Land does not affect title, Lombardo suggests that the document is anticipated by the Commitment to Title Insurance because it comes under the purview of a reference to "other matters". An examination of the precise language is enlightening:

> [Excluded from coverage are] Defects, liens, encumbrances, adverse claims or *other matters* . . . not known to the Company and not shown by the public records but known to the insured claimant . . ..

CP, at 78. Applying the ejusdem generis rule of construction,[4] the term "other matters" is given a meaning similar to the specific items listed. All of the things listed in the policy — defects, liens, etc. — are matters which affect title.

In sum, the document which Lombardo claims Ticor negligently failed to disclose was not — on its face — a document

---

[4]This rule requires that general terms appearing in connection with specific terms are to be given effect only to the extent that the general terms suggest items similar to those designated by the specific terms. "In short, specific terms modify or restrict the application of general terms where both are used in sequence." *Dean v. McFarland*, 81 Wn.2d 215, 221, 500 P.2d 1244, 74 A.L.R.3d 378 (1972).

affecting title. Under *Klickman*, because the document in question does not constitute a title defect, it would be inappropriate dicta to decide whether the underlying duty to disclose documents affecting title exists in this jurisdiction. 105 Wn.2d at 528.

### MOTION TO SUPPLEMENT RECORD

Lombardo seeks to supplement the record pursuant to RAP 9.11. Principal among the proposed supplements is a document entitled "Land Sale Contract". This document regards the transfer of "lieu land" from the Bureau of Reclamation to the Morgans — owners of the Lombardo farm in 1982. As the lieu land was in Grant County, the document was duly recorded in that county's public records. The Land Sale Contract is not recorded in Franklin County, nor referenced in the Agreement to Retain Land in Irrigable Status which was executed by the same parties on the same day.

The Land Sale Contract contains a covenant running with the land which relates not to the lieu land, but to the Lombardo farm in Franklin County. This covenant releases the federal government from all future claims by the Morgans, their heirs, executors, administrators, successors, and assigns:

> from any and all liability or claims for damages of whatsoever nature, including seepage or water conditions, heretofore and hereafter caused to or occurring on the [Lombardo farm] and its appurtenances as a result of the construction, operation, and maintenance of Columbia Basin Project facilities.

Attachment, Motion To Include Letter and Affidavit with Attachments in the Court Record for Review Pursuant to RAP 9.11. This covenant was granted by the Morgans to the federal government in exchange for the lieu land in Grant County. Lombardo also seeks to supplement the records with unsworn letters from federal officials further explaining this transaction.

RAP 9.11(a) establishes that additional evidence may be taken on review if the following factors are satisfied:

> (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably

change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

We deny the motion to supplement the record because none of the proposed supplements satisfy the second factor — that the additional evidence would probably change the decision. Even though the Land Sale Contract verifies Lombardo's argument that the federal government compensated the Morgans for causing the seepage conditions on the Lombardo farm, it does nothing to suggest that Ticor was negligent in failing to disclose the Agreement to Retain Land document. Lombardo argues that when the documents are read together, it becomes clear that there was an encumbrance on the Lombardo farm. However, as Ticor argues, the standard suggested by Lombardo's argument would be an impossible one for title insurance companies to satisfy. When it performed the title search, Ticor had no choice but to rely upon the express language of the Agreement to Retain Land document. In that document, there was no reference to the lieu land or the covenant to release future claims; it was not negligent to somehow "overlook" what the document itself does not disclose. Moreover, because the document fell outside Lombardo's chain of title, Ticor violated no conceivable duty when it failed to discover the Land Sale Contract. *See Douglas v. Title Trust Co.*, 80 Wash. 71, 73-74, 141 P. 177 (1914) (abstractors have no duty to report items out of the chain of title).

Of course, the Land Sale Contract does disclose an encumbrance on the Lombardo farm which the Ticor policy may cover either through payment, or by tendering a defense should this covenant ever be asserted against Lombardo. Ticor admits as much in its brief opposing the motion to supplement. *See* Ticor's Memorandum in Opposition to Mrs. Lombardo's Motion To Supplement Record, at 7 n.4. The

Land Sale Contract and supporting evidence may provide the basis to proceed against other entities. However, this is not the dispute currently before this court.

Having failed in her claim against Ticor, Lombardo's request for an award of attorney fees is denied. We, therefore, affirm the trial court's decision dismissing Lombardo's suit against Ticor in accord with CR 12(b)(6).

ANDERSEN, C.J., and UTTER, BRACHTENBACH, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.