[No. 21985-2-III. Division Three. February 3, 2004.]

ASSOCIATES HOUSING FINANCE L.L.C., *Appellant*, v. YVONNE M. STREDWICK, ET AL., *Respondents*.

*David A. Weibel* (of *Bishop, Lynch & White, P.S.*), for appellant.

54

*Stella J. Edens* (of *Rettig, Osborne, Forgette, O' Donnell, Iller & Adamson, L.L.P.*), for respondents.

---

---

SCHULTHEIS, J. — The question before this court is whether a creditor that innocently obtains a secured interest in property that was fraudulently conveyed to the debtor has priority over a prior unsecured creditor who later obtains a judgment declaring the conveyance void under the Uniform Fraudulent Transfer Act (UFTA), chapter 19.40 RCW. Associates Housing Finance L.L.C. loaned Joel and Illa Page a sum of money secured by a deed of trust on a lot in Franklin County. Over a year later, the Pages entered a confession of judgment admitting that their purchase of the lot was fraudulent, and the transfer was later voided pursuant to UFTA. Associates' motion for a summary judgment order declaring that the lot was encumbered by its paramount lien was denied and its claims against other parties that asserted an interest in the lot were dismissed. It now appeals, contending the fraudulent conveyance was merely voidable, not void, under UFTA. We agree, reverse, and remand for entry of summary judgment for Associates.

FACTS

In September 1994, Marilyn and Arnold Van Hollebeke and Windy Wheatlands, Inc. sold four lots in Franklin County to Hacienda Group, a nonprofit Washington corporation. Hacienda president Joel Page paid $17,000 down on the $85,000 sale price and agreed to make monthly payments until the balance was due in November 1999. Title to the lots was recorded on October 4, 1994. For unknown reasons, the Van Hollebekes also contemporaneously

signed and filed a statutory warranty fulfillment deed, effectively releasing their security interest in the lots.[1]

Hacienda ceased payment on the real estate contract in February 1996. In mid-July 1998, the Van Hollebekes sent Hacienda a demand letter. Two months later, on September 15, Mr. Page, as the president of Hacienda, transferred Lot 3 of the original four Van Hollebeke lots to himself and his wife by statutory warranty deed. This transfer was made without consideration. That same day, the Pages borrowed $140,500 from Associates. To secure their obligation under the promissory note with Associates, the Pages executed a deed of trust encumbering Lot 3. The Van Hollebekes filed a complaint for monies due against Hacienda on September 23. The deed of trust to Lot 3 was filed in Franklin County on October 5.

After they learned of Lot 3's transfer, the Van Hollebekes amended their complaint in December 1999 to add the Pages as defendants. The Van Hollebekes alleged that in order to "avoid corporate liability for the financial obligations of Hacienda Group," the Pages fraudulently conveyed Lot 3 to themselves.[2] Clerk's Papers (CP) at 34. On January 10, 2000, the Pages and Hacienda confessed judgment in favor of the Van Hollebekes. The Pages admitted that the transfer of Lot 3 was a fraudulent conveyance under UFTA. In February 2000, the Van Hollebekes filed a notice of lis pendens and a writ of attachment was issued on that date.[3] Judgment entered on March 10, 2000 granted the Van Hollebekes $69,181 due on the real estate contract and voided the Lot 3 transfer.

---

[1] The Van Hollebekes refer to the fulfillment deed as "an error in drafting." Clerk's Papers at 30.

[2] The Pages also quitclaimed Lot 3 to Emerald Properties in December 1999. There is no indication in the record of what happened to the interest held by Emerald.

[3] The prejudgment writ of attachment was issued because the Van Hollebekes discovered that the Pages had listed Lot 3 for sale and the real estate agent listing the property had indicated that a sale would take place before the confession of judgment was entered.

In September 2000, the Pages filed for Chapter 7 bankruptcy. In the bankruptcy document listing creditors holding secured claims, the Pages included both the Van Hollebekes and Associates as holding claims against Lot 3. Associates contacted the Van Hollebekes a month later and requested a copy of the September 1998 deed from Hacienda to the Pages. Complying by fax, the Van Hollebekes' attorney stated that "this is the deed that was voided in our judgment earlier this year. I look forward to speaking with you next week after you have had a chance to mull this over." CP at 174. Ultimately the bankruptcy court allowed the Pages to retain the lot and to reaffirm their debt to Associates pursuant to 11 U.S.C. § 524(c). The Pages' debt to the Van Hollebekes was discharged in bankruptcy on December 14, 2000.

In November 2000, notice of a sheriff's sale was posted for Lot 3 to satisfy the Van Hollebekes' judgment against Hacienda. At the sale held on December 22, the Van Hollebekes bought Lot 3 for the full amount of their judgment. Their deed was recorded in March 2001. They subsequently sold the lot by statutory warranty deed to Yvonne Stredwick in October 2001.

Associates filed a notice of default in November 2001 alleging that the Pages had failed to pay on their obligation since November 2000. Then, in April 2002, Associates filed a complaint for declaratory judgment and to quiet title against Ms. Stredwick, the Van Hollebekes, Ms. Page, Mr. Page's estate (Mr. Page was now deceased), the Franklin County sheriff, Bear Mountain Forest Products, and all other persons claiming a right or interest in Lot 3.[4] Associates moved for summary judgment in December 2002, arguing that title to Lot 3 was subject to its deed of trust and that all subsequent purchasers' titles were subordinate to that paramount lien. Ms. Stredwick, the Van Hollebekes, and Windy Wheatlands (collectively, the Van Hollebekes) moved for summary judgment in January 2003.

---

[4] In the amended complaint, Windy Wheatlands, Inc. was added as a defendant.

By order dated March 31, 2003, the trial court granted the Van Hollebekes' motion for summary judgment and denied Associates' motion for summary judgment. By that action, the claims against the Van Hollebekes, Ms. Stredwick, and Windy Wheatlands were dismissed. The trial court entered a CR 54(b) certification of final judgment of less than all parties on March 31, 2003 and Associates appealed the judgment soon after.

DISCUSSION .

■ Associates argues on appeal that the trial court erred in concluding that the 1998 fraudulent conveyance from Hacienda to the Pages was void at its inception rather than voidable by judgment. At issue is the effect of a fraudulent conveyance on creditors under UFTA. Because this is a review of a summary judgment, we review questions of law de novo. *Williamson, Inc. v. Calibre Homes, Inc.*, 147 Wn.2d 394, 398, 54 P.3d 1186 (2002). We also engage in de novo review of issues requiring interpretation of statutes. *Berger v. Sonneland*, 144 Wn.2d 91, 104-05, 26 P.3d 257 (2001). We assume the legislature means exactly what it says and will not engage in statutory interpretation of an unambiguous statute. *Id.* at 105.

A fraudulent transfer under UFTA is (1) any transfer made by a debtor with actual intent to hinder, delay, or defraud a creditor; or (2) a transfer made without adequate consideration leaving the debtor with unreasonably small assets, insolvent, or intending to incur more debts than he or she can pay (constructive fraud). RCW 19.40.041(a)(1), (2); *Clearwater v. Skyline Constr. Co.*, 67 Wn. App. 305, 322, 835 P.2d 257 (1992). By their confession of judgment and the trial court's acceptance of that judgment, the Pages and Hacienda established as a matter of law that the transfer of Lot 3 from Hacienda to the Pages in September 1998 was fraudulent for the purposes of UFTA. Consequently, we turn to the remedies afforded to the creditor injured by the fraudulent transfer.

■ In any action for relief against a fraudulent transfer, the creditor, subject to certain limitations described in RCW 19.40.081,[5] may avoid the transfer to the extent necessary to satisfy the creditor's claim, or may attach the asset or enjoin further disposition of the asset by the debtor. RCW 19.40.071(a).[6] Further, if the creditor has obtained a judgment against the debtor, the creditor may levy execution on the asset or its proceeds. RCW 19.40.071(b). The assets of a debtor include the property of the debtor that is not encumbered by a valid lien. RCW 19.40.011(2)(i). A valid lien is an interest in property to secure payment effective against the holder of a subsequent judicial lien. RCW 19-.40.011(8), (13); *Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp.*, 85 Wn. App. 695, 702-03, 934 P.2d 715 (1997), *aff'd*, 135 Wn.2d 894, 959 P.2d 1052 (1998).

The Van Hollebekes, as Hacienda's creditors, were entitled to seek to avoid the fraudulent transfer of Lot 3 to the extent necessary to recover the sums still owed by Hacienda. However, because the Van Hollebekes had given up their security interest in Lot 3 by filing the fulfillment deed, they were only unsecured creditors of Hacienda and did not—until judgment in March 2000—have a valid lien on the lot. As a result, the lot was unencumbered when it was transferred from Hacienda to the Pages in September 1998.

RCW 19.40.081(a) provides that a transfer or obligation is not voidable against a person who took in good faith and for a reasonably equivalent value, or against subsequent transferees or obligees. When, as here, the transferee (the Pages) did not take in good faith or for fair value, judgment may be entered against the first transferee or against any subsequent transferee *other than a good faith transferee or obligee who took for value*. RCW 19.40.081(b)(1), (2). It is undisputed that Associates is a good faith obligee that took for value. Associates' secured interest in the lot was per-

---

[5] The Laws of 2001, chapter 32, section 1 amendment to this statute does not affect the outcome of this action.

[6] The Laws of 2000, chapter 171, section 54 amendment to this statute does not affect the outcome of this action.

fected by endorsement and delivery of the note and its recordation of the deed of trust in the real property records. RCW 7.28.230(3); RCW 61.24.020; RCW 65.08.070. If the Pages had valid title to the lot at the time that they secured their promissory note with a deed of trust on Lot 3, then Associates became an obligee for fair consideration without knowledge of the fraud at the time of the purchase.

According to the Van Hollebekes, a judgment under UFTA that avoids a fraudulent transfer voids the transfer from its inception. They argue that transferees who are knowing participants in the fraudulent transfer never obtain a legitimate interest in the asset. As a consequence, they assert, no one can acquire an interest in the asset through the fraudulent transferee. *See Sofie v. Kane*, 32 Wn. App. 889, 895, 650 P.2d 1124 (1982) ("A grantor can convey no greater title or interest than he or she has in the property."). The plain language of UFTA rebels against that interpretation.

■ Every reference to the creditor's remedies under UFTA is to avoidance of the fraudulent transfer or to its voidability. *See* RCW 19.40.071 (a creditor may seek avoidance of the transfer); RCW 19.40.081 (defining when a transfer is voidable and when a good faith transferee may retain an interest even when the transfer is voidable). In particular, RCW 19.40.081(d) provides that "[n]otwithstanding voidability of a transfer or an obligation under this chapter, a good-faith transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation, to: (1) [a] lien on or a right to retain an interest in the asset transferred." This last provision clarifies that a good faith obligee like Associates obtains a valid interest in an asset even if the transfer of that asset is later determined to be fraudulent and voidable. In contradistinction to the term "void," which means "[o]f no legal effect[,] null," "voidable" is defined as "[v]alid until annulled." BLACK's LAW DICTIONARY 1568 (7th ed. 1999). Accordingly, under UFTA a fraudulent transfer is valid until annulled.

As noted by the Fifth Circuit Court of Appeals examining the Texas UFTA, "a transfer in fraud of creditors is voidable in the general sense that good title may be passed to a transferee who does not have notice of the fraud and void in the very limited sense that creditors may otherwise treat the transferred property as though the transfer had never taken place." *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1272-73 (5th Cir. 1983) (citation omitted). This distinction is evident in the provisions that allow a creditor to attach against the asset or other property of the transferee or to seek an injunction against further disposition by the debtor. RCW 19.40.071(a)(2), (3). Even in those states where statutes specifically provide that fraudulent conveyances are void, the courts have held "void" to mean "voidable." *See Baldwin v. Burton*, 850 P.2d 1188, 1192-93 (Utah 1993); *In re Nowicki*, 202 B.R. 729, 735-36 (Bankr. N.D. Ill. 1996). The general rule of construction is "that when an act is void as to persons who have an interest in impeaching it, the act is not utterly void, but merely voidable." *Baldwin*, 850 P.2d at 1193 (citing *Wagner v. United States*, 573 F.2d 447, 452 (7th Cir. 1978)). Some action must be taken by the creditor to render the transfer void. *Id.*

■■ Here, the Van Hollebekes obtained a judgment in March 2000 against Hacienda and the Pages that voided the September 1998 fraudulent transfer from Hacienda to the Pages. Before the transfer was voided, however, it was valid between the parties, and the Pages gave valid interest in Lot 3 to Associates under the deed of trust. Additionally, because the Van Hollebekes had no lien on the property or other claim at the time the deed of trust was executed, Associates acquired the interest in Lot 3 in good faith and for good value. As a bona fide obligee for value, Associates' perfected security interest has priority over the Van Hollebekes' subsequent judgment lien. *Parker Roofing Co. v. Pac. First Fed. Sav. Bank*, 59 Wn. App. 151, 155, 796 P.2d 732 (1990).

Associates' interest is also paramount to the interest acquired by Ms. Stredwick, who does not qualify as a bona

fide purchaser for value. *Tomlinson v. Clarke*, 118 Wn.2d 498, 500, 825 P.2d 706 (1992) (the bona fide purchaser doctrine applies to purchasers under real estate contracts). First, when the Van Hollebekes bought Lot 3 at the sheriff's sale, they acquired only the right, title, and interest of the debtor, subject to the deed of trust held by Associates. *Desimone v. Spence*, 51 Wn.2d 412, 415, 318 P.2d 959 (1957); *N. Commercial Co. v. E.J. Hermann Co.*, 22 Wn. App. 963, 971, 593 P.2d 1332 (1979). Accordingly, Ms. Stredwick bought Lot 3 subject to the same interest.

██ Second, although Ms. Stredwick's title insurance company gave her a commitment for title insurance that did not mention Associates' secured interest, a preliminary commitment is a different breed of animal than an abstract of title. *Barstad v. Stewart Title Guar. Co.*, 145 Wn.2d 528, 535, 39 P.3d 984 (2002). An abstract of title lists all recorded conveyances and instruments that impact the chain of title and imparts constructive notice regarding the chain of title. RCW 48.29.010(3)(b); *Barstad*, 145 Wn.2d at 536. The preliminary commitment, on the other hand, is merely an offer to issue title insurance. *Barstad*, 145 Wn.2d at 536. It does not serve the same purpose as regards constructive notice. *Id.* Because the abstract of title would have shown Ms. Stredwick that Associates had a perfected security interest on a deed of trust to Lot 3 prior to the Van Hollebekes' judgment lien on the same property, Ms. Stredwick had constructive notice of Associates' paramount interest. RCW 65.08.070; RCW 48.29.010. With such notice, she did not acquire superior interest in the property. *Tomlinson*, 118 Wn.2d at 500.

Finally, the Van Hollebekes contend Associates' suit must be dismissed due to the equitable doctrine of laches. They argue that Associates failed to take action to challenge the March 2000 judgment for nearly two years, causing irreparable harm to their ability to defend because the lot had been sold twice and Mr. Page had died in the interim.

██ The defense of laches protects defendants who are injured by a plaintiff's delay in bringing an action. *State ex*

*rel. Peninsula Neighborhood Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 340, 12 P.3d 134 (2000). The defendant must establish that (1) the plaintiff knew, or could have reasonably discovered, the facts constituting a cause of action; (2) the plaintiff unreasonably delayed filing the action; and (3) the defendant was materially prejudiced by the delay. *Somsak v. Criton Techs./Heath Tecna, Inc.*, 113 Wn. App. 84, 93, 52 P.3d 43, 63 P.3d 800 (2002). Application of the doctrine is not justified here because Associates was not joined as a party in the Van Hollebekes' suit against Hacienda and the Pages; the debt by the Pages was reaffirmed in bankruptcy in December 2000; and Associates had no reason to take legal action until the Pages defaulted on the reaffirmed debt. Associates filed a notice of default in November 2001 and filed the complaint to quiet title five months later. This five-month delay from the date of default was not unreasonable and did not materially prejudice the Van Hollebekes.

For the above reasons, we find that the trial court erred in granting summary judgment to the Van Hollebekes dismissing Associates' claims against the Van Hollebekes, Ms. Stredwick, and Windy Wheatlands. Because Associates has a valid secured interest in Lot 3, the case is remanded to the trial court for entry of summary judgment declaring that Lot 3 is encumbered by Associates' deed of trust.

Reversed and remanded for entry of a summary judgment order for Associates.

BROWN, C.J., and KURTZ, J., concur.