## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| C. ROBERT SUESS, SR., a single man, [†] <br><br> Respondent, <br><br> v. <br><br> NORTHWEST TIMBER AND DEVELOPMENT, INC., a Washington corporation aka NW TIMBER AND DEVELOPMENT, INC., and MICHAEL J. COWAN and JANE DOE COWAN, husband and wife and the martial community composed thereof, <br><br> Appellants. | No. 55041-5-II <br> Consolidated with No. 55545-0-II <br><br><br> UNPUBLISHED OPINION |

WORSWICK, P.J. — Michael Cowan and Northwest Timber & Development, Inc.

(NWTD) appeal the trial court's final judgment and order finding fraudulent conveyance and

corporate disregard. Cowan and NWTD also appeal the trial court's order denying the

defendants' motion to cancel lis pendens. Cowan, as the sole officer and director of NWTD,

entered into a promissory note agreement with C. Robert Suess in exchange for a business loan.

Before payment became due, Cowan transferred substantially all of NWTD's assets to himself,

leaving NWTD with inadequate assets to repay the loan. C. Robert Suess filed a lawsuit against

Cowan and NWTD, and the Estate of C. Robert Suess Sr. (Estate) obtained a judgment.

---

[†]C. Robert Suess Sr. died while this case was pending, and the estate of C. Robert Suess Sr. was
substituted as plaintiff in 2018.

No. 55041-5-II

On appeal, Cowan and NWTD argue (1) the trial court's findings were not supported by substantial evidence, (2) the trial court erred in finding fraudulent conveyance, (3) the trial court ordered remedies unauthorized by the Uniform Fraudulent Transactions Act (UFTA),[1] (4) the trial court erred in piercing the corporate veil (corporate disregard), and (5) the trial court erred in not cancelling the lis pendens. All parties request attorney fees on appeal.

We hold that most of the trial court's findings are supported by substantial evidence, and that those findings support a conclusion of fraudulent conveyance. In addition, we hold that the remedies imposed by the trial court were allowed under the UFTA. We also hold that the trial court's findings do not support a conclusion of corporate disregard, and the trial court did not err in not cancelling the lis pendens. Lastly, we award the Estate attorney fees on appeal.

Accordingly, we affirm in part, reverse in part, and remand for the trial court to amend its judgment and order.

FACTS

I. BACKGROUND

NWTD, an estate development business wholly owned by Michael Cowan, owned and operated Kelso Self Storage. NWTD had no other officers besides Cowan. As part of plans to expand Kelso Self Storage, NWTD acquired commercial lots located at 900 Hazel Street and 1000 Hazel Street. NWTD owned 900 Hazel free and clear.

---

[1] Former chapter 19.40 RCW (1987).

In 2009, NWTD started trying to sell Kelso Self Storage, 900 Hazel, and 1000 Hazel before a balloon payment became due on 1000 Hazel. Robert[2] offered to provide financing for 1000 Hazel. Robert was an elderly man who regularly loaned individuals lines of credit in exchange for interest payments. Robert made these loans based on word of mouth.

Robert agreed to loan Cowan $130,000, and secured the loan with a promissory note with monthly payments of $821.69. The terms of the promissory note included an interest rate of 6.5 percent per annum, with the balance due as a balloon payment after two years, on August 1, 2011. The note also included an 18 percent default interest provision. The promissory note gave Cowan the option to prepay the balance before its due date without penalties.

The note was secured by a deed of trust on 1000 Hazel. Robert intended to lend Cowan, not NWTD, the money because he was aware of all the ways that a corporation could avoid its debts.[3] Nonetheless, neither the promissory note nor the deed of trust was signed by Robert or Cowan; instead, only NWTD signed both documents.

In May 2011, NWTD was able to sell Kelso Self Storage, but not 900 Hazel or 1000 Hazel. Kelso Self Storage sold for $1,195,000. After satisfying debts and paying closing costs, Cowan transferred an estimated net profit of $325,000 from NWTD to himself. Approximately $100,000 of that amount was earmarked for taxes. That same month, Cowan, as the sole director of NWTD, conducted a meeting at which he was the sole attendee, and NWTD resolved to

---

[2] Because C. Robert Suess, and his son, John Suess, share the same last name, we refer to each person by his first name for clarity.

[3] Although Robert died before trial, his transcribed deposition was admitted at trial and considered by the trial court.

transfer all of NWTD's assets, including 900 Hazel, all equipment, tools, cash funds, and all other property excluding 1000 Hazel, to himself.

In June 2011, Robert suffered a stroke and his son, John, took over management of the debt. In December, NWTD defaulted on its loan to Robert. John sent Cowan a letter informing him that his balloon payment was past due, and that he must send payment or evidence of an agreement to extend the balloon payment due date by November 5, 2011. Just two days after the November 5 deadline, on November 7, Cowan quit claimed all interest in 900 Hazel to himself. The transfer left NWTD with no remaining assets other than 1000 Hazel. Notably, Cowan had also owed $20,300.72 in delinquent tax payments on 1000 Hazel, which Robert paid.

Cowan knew that 1000 Hazel was difficult to sell. In fact, prior to the transfer, Cowan had tried to sell 1000 Hazel for more than two years without success. In December 2011, Cowan negotiated with John to extend the note until August 2012. After the extension, payments resumed until 2012 at which point payments stopped. Because all of NWTD's assets were transferred to Cowan, NWTD was unable to pay its debt and had insufficient capital to liquidate for the payment of debts.

On October 25, John demanded full payment plus penalties and interest. Cowan explained that NWTD had no funds to make full payment until 1000 Hazel was sold and sought to negotiate with John to avoid foreclosure on 1000 Hazel. However, John informed Cowan that if payment of the loan and taxes was not made promptly, he would pursue legal action against him. Cowan made no additional payments, and Robert sued NWTD and Cowan to foreclose on the note and deed of trust, alleging, among other things, that the transfer of assets from NWTD to Cowan was fraudulent.

4

In 2016, NWTD and Cowan agreed to sell 900 Hazel and 1000 Hazel to Butch Henry, but Robert filed a lis pendens on 900 Hazel. Due to the lis pendens and other delays, Henry eventually gave up.

## II. PROCEDURAL HISTORY, TESTIMONY, AND TRIAL COURT'S FINDINGS

In 2013, Robert filed a lawsuit alleging breach of the promissory note and deed of trust. Robert filed a motion for summary judgment, arguing, among other things, that NWTD breached the promissory note and deed of trust by failing to pay, and that Cowan fraudulently conveyed property and funds from NWTD to himself. NWTD conceded that summary judgment in favor of Robert was appropriate on the breach of promissory note and deed of trust issue.[4]

The trial court granted summary judgment against NWTD regarding its breach of the note and deed of trust, but denied summary judgment on the fraudulent conveyance claim. The trial court awarded Robert reasonable attorney fees for prevailing against NWTD, but not for any claims relating to Cowan.

The court conducted a bench trial. At trial, witnesses testified to the previously mentioned facts that are more specifically described below. Additionally, the trial court admitted documents under a joint statement of evidence supporting many of these facts. John testified that Robert never obtained an appraisal of 1000 Hazel and never asked for documentation or any financial statements from Cowan before loaning him the money because he believed Cowan was a person in need.

---

[4] NWTD stipulated that it defaulted on the loan in the amount of $125,389.13. Since then, the default has accrued at 18 percent per annum, as outlined in the deed of trust. The total accrued principal as of June 2020 was $252,235.22.

Cowan testified that although he had "several buyers lined up" for 1000 Hazel, none of the potential buyers materialized into a pending or potential sale. 1 Report of Proceedings (RP) (July 3, 2019) at 54. Cowan also testified that he was unable to sell 1000 Hazel for $100,000, despite that the county assessor valued 1000 Hazel at $159,430.

The trial court entered judgment in favor of the Estate in the amount of $333,220.35, which included attorney fees. It also found fraudulent conveyance of 900 Hazel and corporate disregard of NWTD. The trial court enjoined NWTD and Cowan from disposing of assets traceable to NWTD, allowed any and all assets traceable to NWTD to be subject to collection of the judgment, and foreclosed on 1000 Hazel with all proceeds of the sale awarded to the Estate. The trial court ordered Cowan to convey 900 Hazel to NWTD within 30 days of the judgment.

Based on corporate disregard, the court also ruled that Cowan was personally liable for the entire judgment.

The trial court made the following findings of fact:

5.2 [The] transfer resulted in an inability of NWTD to pay its debts and insufficient capital to liquidate for the payment of debts.

. . . .

7.1 Defendants had the actual intent to hinder, delay, or defraud Plaintiff.

7.2 COWAN is an insider of NWTD. As its only corporate officer he solely controlled all actions of the corporation.

7.3 When the transfer of real property and property from NWTD to COWAN occurred, the decision was fully contemplated, formed, and executed by the only insider and the only recipient, COWAN.

7.4 COWAN, notwithstanding efforts to market and sell the real property, does continue in possession and control of the transferred property.

7.5     COWAN purposely concealed the transfer from SUESS. A letter dated October 25, 2011, from Mr. Suess to Defendants not only confirmed SUESS had a stroke in June 2011, but also indicated that the balloon payment was more than two months past due, and that an answer to the debt/payment situation was due on November 5, 2011. Due to the increased pressure, NWTD, guided by its sole shareholder, COWAN, quit claimed all interest in 900 Hazel Street to COWAN, in his personal capacity, effective November 7, 2011. At that time, NWTD had little to no assets, other than 1000 Hazel. COWAN then sought to and did extend the Note on December 29, 2011. COWAN and NWTD was completely tight-lipped and divulged nothing about the lack of assets in NWTD.

7.6     The parties had engaged in a pattern of informal information exchange that could lead a party to believe a degree of openness and forthrightness would be employed and reciprocated. The timing of the transfer in light of the letter suggests a clear attempt to conceal the transfer from the contractually bound party, NWTD, to a non-contractually bound party, COWAN.

7.7     Prior to the transfer of the real property on November 7, 2011, no lawsuit had been filed, nor was there an explicit threat of a lawsuit being filed from Plaintiffs. The lawsuit was filed on October 15, 2013. There was an implied indication that if the moneys owed were not paid, a lawsuit would be a real and logical possibility.

7.8     After the proceeds and taxes of the sale of NWTD's mini-storage business and real estate were transferred from the corporate account to COWAN's personal account, the only asset remaining in the corporate account, other than 1000 Hazel, was the 900 Hazel Street property. In November 2011, that corporate asset (900 Hazel) was removed from the corporate shell, leaving the corporation with insufficient assets to pay the debt to SUESS.

7.9     COWAN and NWTD never absconded, hid, or disappeared. Rather, addresses and contact information were known and do not appear to have changed. Additionally, there was regular communication between Defendants, SUESS, and their respective counsel.

7.10    COWAN did remove assets from the corporate account and did fail to notify SUESS.

7.11    The mini-storage business and real property sale proceeds were a manifestation of labor expended and the transfer of property back to COWAN was a move to prevent SUESS from being paid the amount of money due on the Note.

7.12 COWAN and NWTD did not and have not paid the money and interest owed on the Note. After the transfer of property, cash, and real property was made, NWTD had no funds to pay the Note.

7.13 900 and 1000 Hazel Street were difficult to market and sell, regardless of the Lis Pendens filed by SUESS. NWTD had no or very little funds and was unable to pay its debts as they became due. The court is aware of the impact of the lis pendens on the proposed sale of 900 and 1000 Hazel to Butch Henry and continuing marketability.

7.14 There was no transfer of essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

7.15 COWAN and NWTD had the actual intent to hinder, delay, or defraud SUESS, a creditor.

7.16 Monies within the NWTD account were transferred to COWAN in his personal capacity with the actual intent to hinder, delay, or defraud SUESS, a creditor.

Clerk's Papers (CP) at 114-118. In connection to the corporate disregard claim, the trial court

found the following:

8.1 COWAN and NWTD purposefully used NWTD's corporation status to distribute all corporate assets out of the company to avoid the duty to repay cash to SUESS.

8.2 It is necessary in this case to disregard the protections of a corporation to prevent an unjustified loss to SUESS.

8.3 On May 13, 2011, prior to the balloon payment deadline in the Note of August 1, 2011, COWAN and NWTD sold the mini-storage business and real estate. With sale proceeds of approximately $325,000 in the corporate account, COWAN and NWTD had a duty to fully satisfy the debt owed to SUESS which was less than $130,000. Even if approximately $100,000 of the funds were earmarked for taxes, COWAN and NWTD still had substantial funds to retire the debt owed to SUESS.

8.4 COWAN chose to take all the cash, property, and real property from the corporate shell and retire.

8

8.5     These actions placed the entire risk on SUESS that 1000 Hazel would be insufficient to cover the debt owed to SUESS. This is inequitable, resulting in a clear benefit to COWAN and NWTD and an equally clear detriment to SUESS.

8.6     There was no evidence of any pending interest or a buyer for either 900 or 1000 Hazel at the time of default and shortly after. Defendants acknowledged that the two properties (900 and 1000 Hazel) had proved difficult to sell for the two plus years prior to the default. This was stated in NWTD corporate meeting notes for fiscal year 2009 in Exhibit 1, Tab 2.

8.7     In July 2011, the county assessor valued 1000 Hazel at $159,430 and when COWAN and NWTD appealed that valuation, they indicated their best estimate of value at $127,250. At either value, there is no showing that 1000 Hazel could have been sold, reduced to cash, and paid the money debt to SUESS.

8.8     The Note indicates Defendants "promise[d] to pay to [Suess] . . . the principal sum of One Hundred Thirty Thousand and 00/100 dollars." Exhibit 1, Tab 8 contains this language.

8.9     The 1000 Hazel property was not liquid and was unavailable to satisfy the cash debt. Without this asset, NWTD only had the corporate assets which were gone within weeks and months of having sufficient funds to pay the debt.

CP at 118-19. The trial court also made the following findings regarding taxes and the lis pendens:

### 9. Taxes

9.1     SUESS paid the real property taxes on 1000 Hazel in an effort to prevent the county from foreclosing on it.

9.2     The 2009 taxes for the real property were paid by COWAN and NWTD.

9.3     SUESS paid the real property taxes, penalties, and interest for all other years subsequent, including the tax year 2010 and forward. Defendants are liable to Mr. Suess for these funds paid.

9.4     SUESS paid $20,300.72 in real property taxes, penalties, and interest for the Hazel Street real property on behalf of COWAN and NWTD.

### 10. Lis Pendens

10.1     A Lis Pendens was filed against 900 Hazel Street in Kelso, Cowlitz County, Washington by SUESS on March 9, 2016 and October 18, 2016.

10.2    900 Hazel was an asset of NWTD prior to default on the Note.

10.3    NWTD transferred 900 Hazel to COWAN on November 7, 2011.

10.4    SUESS sought in this action to reverse the transfer of 900 Hazel to make it an asset of NWTD available for collection of the Note.

10.5    The Lis pendens was necessary and justified to prevent further fraudulent transfer of 900 Hazel and to avoid the need to add parties to this action.

CP at 119-120.

The trial court also entered the following conclusions of law which Cowan and NWTD contest:

5.1    As a result of NWTD transfers of real and personal property to COWAN, NWTD became insolvent.

. . . .

6.4    NWTD and COWAN willfully refused to pay SUESS.

. . . .

7.1    SUESS has met the multi-factor test (RCW 19.40.041) showing that Defendants had the actual intent to hinder, delay, or defraud Plaintiff.

. . . .

7.3    COWAN and NWTD retained possession or control of the property transferred after the transfer.

7.4    The transfer to Cowan was concealed.

7 .5    SUESS, COWAN and NWTD had engaged in a pattern of informal information exchange that could lead a party to believe a degree of openness and forthrightness would be employed and reciprocated.

7.6    COWAN and NWTD concealed the transfer of 900 Hazel from SUESS.

7.7    A lawsuit was a likely path for the resolution of the issues between the parties.

7.8     The transfers of 900 Hazel and the proceeds of the mini-storage sale were substantially all of NWTD's assets.

7.9     COWAN did remove assets from NWTD and did fail to notify SUESS.

7.10    There was no financial consideration for the transfer of NWTD assets to COWAN.

7.11    NWTD was left insolvent by the transfer of NWTD assets to COWAN.

7.12    The transfer of NWTD assets to COWAN occurred shortly before or shortly after a substantial debt was incurred.

7.13    SUESS established by a preponderance of the evidence that NWTD and COWAN had the actual intent to hinder, delay, or defraud SUESS, a creditor.

7 .14   The transfer of 900 Hazel and the financial assets from NWTD to COWAN was a fraudulent conveyance.

. . . .

8.1     NWTD distributed funds resulting in the corporation being unable to pay its liabilities as they became due.

8.2     NWTD and COWAN used the corporate form to intentionally evade the duty to pay SUESS.

8.3     It is necessary to disregard the corporation to prevent an unjustified loss to SUESS.

8.4     NWTD and COWAN purposefully used NWTD's corporation to distribute all corporate assets out of the company to avoid the duty to repay cash to SUESS.

. . . .

8.6     NWTD and COWAN had a duty to satisfy corporate debts from the proceeds of the sale of the corporate business, Kelso Self-Storage.

8.7     It is inequitable for NWTD and COWAN to remove assets from NWTD leaving the corporation unable to pay its debts.

8.8     900 Hazel and 1000 Hazel failed to sell and do not amount to assets with which NWTD or COWAN can make payment.

8.9     The value of 1000 Hazel was insufficient to satisfy the debt owed to
SUESS.

. . . .

10.1     SUESS had substantial justification to record a Lis Pendens by virtue of
the fraudulent conveyance of 900 Hazel from NWTD to COWAN.

10.2     The Lis Pendens on 900 Hazel was properly recorded in an action
affecting title to real property.

10.3     NWTD and COWAN are not inappropriately damaged by the Lis Pendens
on 900 Hazel.

10.4     NWTD and COWAN were not interfered with by SUESS in their
contractual relationship with a buyer.

10.5     NWTD and COWAN are not damaged as a result of claimed interference
with a contractual relationship with a buyer.

CP at 121-125.

Cowan and NWTD appeal the trial court's final judgment along with its order denying

their motion to cancel the lis pendens.

ANALYSIS

I. CHALLENGED FINDINGS OF FACT[5]

Cowan and NWTD argue that many of the trial court's findings of fact are not supported

by substantial evidence and thus must be reversed and vacated. We hold that all the findings are

either verities or supported by substantial evidence, except for findings 7.11, 8.3, and 8.6.

---

[5] Cowan and NWTD assign error to several findings of fact, but in some instances, instead of
arguing about the evidence, their brief argues that the finding fails to support conclusions of law.
Specifically, many of their arguments simply argue that the findings do not support some of the
factors utilized by the trial court to find fraudulent conveyance (the factors are analyzed below).
Because Cowan and NWTD improperly challenge findings of fact 5.3, 7.4, 7.7, 7.16, 8.9 and
10.4, those findings are verities on appeal. *In re Estate of Little*, 9 Wn. App. 2d 262, 274, 444
P.3d 23 (2019).

We review a trial court's findings of fact following a bench trial to determine whether those findings are supported by substantial evidence. *In re Estate of Barnes*, 185 Wn.2d 1, 9, 367 P.3d 580 (2016). Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the premise. *In re Marriage of Condie*, 15 Wn. App. 2d 449, 459, 475 P.3d 993 (2020). The test for substantial evidence requires more than "a mere scintilla" of evidence, but is satisfied with any evidence that may convince a reasonable person of the truth of the fact. *Nw. Pipeline Corp. v. Adams County.*, 132 Wn. App. 470, 475, 131 P.3d 958 (2006).

As such, we defer to the trial court for resolution of conflicting testimony and credibility determinations, and we do not reweigh the evidence under the substantial evidence test. *Barnes*, 185 Wn.2d at 9, 17. "Unchallenged findings of fact are verities on appeal." *In re Estate of Little*, 9 Wn. App. 2d 262, 274, 444 P.3d 23 (2019). And, we analyze findings and conclusions according to what they are as opposed to how they are labelled. *See Morgan v. Briney*, 200 Wn. App. 380, 396, 403 P.3d 86 (2017). A finding of fact is a determination made from examining the evidence, but a conclusion of law is a determination made by a process of legal reasoning or interpretation of the legal significance of evidentiary facts. *In re Welfare of A.L.C.*, 8 Wn. App. 2d 864, 872, 439 P.3d 694 (2019).[6]

A.    *Findings 5.2, 7.8, 7.12, and 7.13, and 8.5: Insufficient Funds*

Cowan and NWTD argue that findings 5.2, 7.8, 7.12, 7.13, and 8.5 are not supported by substantial evidence. Cowan and NWTD dispute the portions of those findings that state that

---

[6] Cowan and NWTD argue that findings 7.1, 7.11, 7.15, 7.16, 8.2, 8.5, and 10.5 are conclusions of law. We agree that findings 7.1, 7.15, 7.16, and 8.2 are conclusions of law, but findings 7.11, 8.5, and 10.5 are properly labelled as findings of fact.

13

NWTD was left with insufficient funds to pay the balance on the promissory note following the transfer of assets in 2011, and that the transfer was to Robert's detriment. We hold that the disputed portions are supported by substantial evidence.

Here, Cowan and NWTD do not dispute the trial court's finding that Cowan transferred all of NWTD's assets, except for 1000 Hazel, to himself. They also do not dispute that Cowan transferred over $325,000 in cash to himself. Cowan knew that 1000 Hazel was difficult to sell and that he owed property taxes amounting to over $20,000. Cowan and NWTD also do not dispute the trial court's finding that Cowan had tried to sell 1000 Hazel for many years without success.

Nonetheless, even had Cowan been able to sell 1000 Hazel, its fair value of approximately $159,430 would not have covered the principal loan amount of $125,389, default interest at 18 percent, and overdue taxes on the property. Thus, the logical conclusion is if Cowan had trouble liquidating 1000 Hazel for more than five years at a price of $100,000, then the property was unlikely to sell in a timely manner to avoid default on the balloon payment of over $125,000 owed to Robert. The transfer of assets was clearly to Robert's detriment because it left NWTD with insufficient assets to repay the debt. Thus, substantial evidence supports the findings.

B.      *Findings 6.6 and 8.3: Ability To Pay*

Cowan and NWTD argue that findings 6.6[7] and 8.3 are not supported by substantial evidence. We hold that finding 6.6 is supported by substantial evidence, but finding 8.3 is not.

---

[7] The trial court entered two findings numbered 6.6. The disputed finding is the second finding 6.6.

The disputed portion of finding 6.6 states, "Defendants willfully refused to pay the debt when the full payoff amount in dollars [was] in [d]efendants['] control and payment would have avoided the entire dispute." CP at 114. The disputed portion of 8.3 states, "With sale proceeds of approximately $325,000 in the corporate account, COWAN and NWTD had a duty to fully satisfy the debt owed to SUESS which was less than $130,000." CP at 118.

Finding 6.6 is supported by substantial evidence. Cowan does not dispute that when NWTD successfully sold Kelso Self Storage in May 2011, he transferred $325,000 from NWTD to himself, of which approximately $100,000 was reserved for taxes. In addition to the proceeds from Kelso Self Storage, it is undisputed that NWTD owned funds, equipment, and other assets, although it is unclear how much these assets were worth. With the proceeds from the sale of Kelso Self Storage alone, NWTD could have fulfilled its obligation to Robert, but it chose not to. Thus, finding 6.6 is supported by substantial evidence.

However, finding 8.3 is not supported by substantial evidence. In May 2011, NWTD was not obligated to pay more than the monthly installment of $821.69 agreed upon in the promissory note. The balloon payment was not due until August 2011. The promissory note imposed an obligation of a monthly installment, and it gave the *option* for NWTD to prepay the balance before its due date without penalties. No other provision of the promissory note obligated NWTD to pay the balance in full as soon as the funds became available. Thus, in May 2011, NWTD was not obligated to pay the balance in full from the proceedings of selling Kelso Self Storage. Finding 8.3 is not supported by substantial evidence.

C.      *Findings 7.5, 7.6, and 7.10: Intentional Concealment of the Transfer of Assets From NWTD To Cowan*

Cowan and NWTD argue that findings 7.5, 7.6, and 7.10 are not supported by substantial evidence. We hold that substantial evidence supports the findings.

The disputed portion of finding 7.5 states: "COWAN purposely concealed the transfer from SUESS." CP at 116. The disputed portion of finding 7.6 states

> The parties had engaged in a pattern of informal information exchange that could lead a party to believe a degree of openness and forthrightness would be employed and reciprocated. The timing of the transfer in light of the letter suggests a clear attempt to conceal the transfer from the contractually bound party, NWTD, to a non-contractually bound party, COWAN.

CP at 116. And, finding 7.10 states, "COWAN did remove assets from the corporate account and did fail to notify SUESS." CP at 117.

Here, John testified that Robert agreed to loan Cowan money because of Cowan's reputation, and that Robert never asked for documentation or any financial documents from Cowan before he loaned Cowan the money. Robert also stated that he never read through or signed documents before agreeing to loan Cowan the money. Robert's testimony indicated that the transaction was informal—Robert and Cowan communicated through their joint realtor, exchanged a verbal agreement at first, and Robert never signed the deed of trust or promissory note. Thus, evidence supports a finding that Robert and Cowan had a pattern of informal information exchange and an informal way of conducting business.

In addition, Cowan and NWTD do not dispute that Cowan quitclaimed 900 Hazel and all other assets owned by NWTD only two days after John expected receipt of payment for the overdue balance. The transfer occurred after Robert had suffered a stroke and was unable to

manage the loan himself.  More so, Cowan and NWTD do not dispute that Cowan made the transaction in his capacity as the president and sole director of NWTD and without informing or notifying any creditors, including Robert.  Thus, substantial evidence supports a finding that Cowan failed to inform Robert of the transfer and concealed the transaction from Robert.

Findings 7.5, 7.6, and 7.10 are supported by substantial evidence.

D.      *Finding 7.7: Impending Lawsuit*

Cowan and NWTD argue that finding 7.7 is not supported by substantial evidence.  We disagree.

The disputed portion of finding 7.7 states that "[t]here was an implied indication that if the moneys owed were not paid, a lawsuit would be a real and logical possibility."  CP at 116.

Here, Cowan was aware of the possibility of a foreclosure if he did not pay the money he owed to Robert.  In a letter to John, Cowan stated that he would like to discuss other possibilities to pay the loan without resorting to foreclosure.  More than a year before filing the lawsuit, John informed Cowan that because it became clear he could not perform on the promissory note, Robert would seek legal action against him.  Cowan was aware of the possibility of legal action necessary to effectuate any foreclosure proceedings, thus, substantial evidence supports finding 7.7.

E.      *Finding 7.11: Valuable Consideration for the Transfer*

Cowan and NWTD argue that finding 7.11 is not supported by substantial evidence.  We agree.

Finding 7.11 states the "mini-storage business and real property sale proceeds were a manifestation of labor expended and the transfer of property back to COWAN was a move to prevent SUESS from being paid the amount of money due on the Note." CP at 117.

The finding is not supported by substantial evidence because neither party presented any evidence as to why Kelso Self Storage was a manifestation of Cowan's labor but the transfer of 900 Hazel was not. Thus, substantial evidence does not support this finding.

F.      *Findings 8.6 and 8.7: Inability To Sell 900 or 1000 Hazel*

Cowan and NWTD argue that findings 8.6 and 8.7 are not supported by substantial evidence. We hold that finding 8.6 is not supported by substantial evidence, but finding 8.7 is.

The disputed portion of finding 8.6 states: "[t]here was no evidence of any pending interest or a buyer for either 900 or 1000 Hazel at the time of default and shortly after." CP at 118. And, the disputed portion of finding 8.7 states that "there is no showing that 1000 Hazel could have been sold, reduced to cash, and paid the money debt to SUESS." CP at 119.

As to finding 8.6, Cowan testified that around the time of default in 2011, his real estate agent had "several buyers lined up." 1 RP (July 3, 2019) at 54. Thus, the trial court's statement that "no evidence" was presented regarding pending interest on 900 or 1000 Hazel is incorrect, and is thus unsupported by substantial evidence. CP at 118.

However, finding 8.7 is supported by substantial evidence. Around the time of default in 2011 and 2012, neither party presented any evidence of serious interest in 1000 Hazel. In fact, Cowan and NWTD do not dispute that Cowan had been unsuccessful in soliciting interest or serious buyers for 1000 Hazel in the years preceding the transfer. There was evidence of a

potential sale to Butch Henry in 2016, but that buyer came years after the transfer and the default. Thus, finding 8.7 is supported by substantial evidence.[8]

## II. CHALLENGED CONCLUSIONS OF LAW

Cowan and NWTD argue that the findings of fact do not support the conclusions of law. We hold that even though some findings of fact are not supported, the remaining findings nonetheless support the conclusions of law.

We review conclusions of law de novo to determine if they are supported by the findings of fact. *Barnes*, 185 Wn.2d at 9.

A.      *Fraudulent Conveyance*

1. *Conveyance of Corporate Assets*

Cowan and NWTD argue that the findings of fact do not support the individual conclusions of law that comprise the general conclusion that the transfer of 900 Hazel was fraudulent. We disagree.

Washington's Uniform Fraudulent Transactions Act (UFTA), former chapter 19.40 RCW, regulates fraudulent transfers.[9] The "purpose of the UFTA is to provide relief for

---

[8] Cowan and NWTD also argue that finding 10.5 is unsupported by substantial evidence. They base their argument on the assumption that the fraudulent conveyance claim does not affect title. However, as discussed below, the fraudulent conveyance claim affects title, and thus the argument fails.

[9] RCW 19.40, formerly known as UFTA, is now known as the Uniform Voidable Transactions Act (UVTA). LAWS OF 2017, ch. 57, § 13. Although the trial court applied, and both parties argue, the UVTA, that Act does not apply to transfers before July 23, 2017. RCW 19.40.905(2). Because the transfers here occurred before 2017, we apply the UFTA. Therefore, we cite to former chapter 19.40 RCW (1987). The statutory factors are identical, so this does not change the outcome.

creditors whose collection on a debt is frustrated by the actions of a debtor to place the putatively

satisfying assets beyond the reach of the creditor." *Thompson v. Hanson*, 168 Wn.2d 738, 750,

239 P.3d 537 (2009).

A fraudulent transfer occurs when a debtor acts "[w]ith actual intent to hinder, delay, or

defraud any creditor of the debtor." Former RCW 19.40.041(a)(1) (1987); *Hanson*, 168 Wn.2d

at 744. In determining whether a debtor had actual intent to hinder, delay or defraud, the court

may consider whether

> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) The transfer was of substantially all the debtor's assets;
> (6) The debtor absconded;
> (7) The debtor removed or concealed assets;
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Former RCW 19.40.041(b). The factors listed are nonexclusive, and the court may consider

other evidence signaling intent to defraud, hinder, or delay. *Clayton v. Wilson*, 168 Wn.2d 57,

69-70, 227 P.3d 278 (2010).

The creditor has the burden of proving the elements of fraudulent conveyance by substantial evidence. *See Clearwater v. Skyline Const. Co.,* 67 Wn. App. 305, 321, 835 P.2d 257 (1992).

The court found that the Estate met the multi-factor test showing that Cowan had the actual intent to hinder, delay or defraud. The statutory factors, in conjunction with other facts, establish an intent to defraud Suess. First, the transfer was to an insider. Here, Cowan was the sole director, officer, and shareholder of NWTD. Cowan conducted a meeting, to which he was the sole attendee, and resolved to transfer almost all of NWTD's assets, including all equipment, tools, cash funds, and properties to himself. Thus, this factor is met.

Second, the transfer was concealed. Cowan stopped making payments shortly after Robert suffered a stroke. After John took management of the debt, he sent Cowan a notification and requested proof of payment no later than November 5. Only two days later, Cowan quit claimed 900 Hazel to himself. Cowan never disclosed to Robert or John that he had transferred all of the corporation's assets except 1000 Hazel to himself. This factor is met.

Third, although John threatened Cowan with a lawsuit, the threat did not come before the transfer was made. However, Cowan was aware of the possibility of a foreclosure should he not pay the money owed. In December 2012, John informed Cowan that if he did not pay, Robert would initiate legal proceedings to recover the debt owed. Although these facts clearly establish that John threatened Cowan with suit if payment was not promptly made, this does not meet factor (4), which requires that the threat was made either before the transfer of after the obligation was incurred. Former RCW 19.40.041(b)(4). Nonetheless, Cowan's knowledge of the balloon payment and looming foreclosure is relevant when evaluating Cowan's intent to

defraud a creditor because the factors listed in former RCW 19.40.041(b) are not exhaustive and the trial court was free to consider additional factors not listed. *See Clayton*, 168 Wn.2d at 69-70.

Fourth, Cowan transferred substantially all of NWTD's assets, including funds, proceeds from the sale of Kelso Self Storage, equipment, and all other properties, except 1000 Hazel, to himself. This factor is met.

Fifth, although Cowan did not conceal NWTD's assets, he removed almost all assets, except 1000 Hazel, from NWTD's possession to his personal accounts which, absent a ruling of fraudulent conveyance, put the assets out of the reach of the Estate. This factor is met.

Sixth, NWTD became insolvent shortly after the transfer was made. When a debtor is unable to pay its debts as they become due, the debtor is presumed to be insolvent. RCW 19.40.021(b). Here, NWTD defaulted on its loan a few months after the transfer of NWTD's assets. After the transfer, NWTD was left only with 1000 Hazel, which was valued at $159,430 and was difficult to sell, not generating any revenue, had a property tax bill of over $20,000, and could not have been reduced to cash by the due date. NWTD owed a balloon payment amounting to $125,389.13, which it could not pay, as evidenced by its default. This factor is met.

Seventh, the transfer occurred shortly before a substantial debt was due. Cowan resolved to transfer all of NWTD's assets in May 2011, a few months before the balance on the promissory note was due. That same month, Cowan sold Kelso Self Storage, and transferred profit worth more than $325,000 to his personal account. Cowan transferred all the assets a few months before the balloon payment became due on the promissory note. Despite the evidence

establishing that Cowan transferred the assets shortly before the debt was due, factor (10) requires that the transfer occurred "shortly before or shortly after *a substantial debt was incurred*." Former RCW 19.40.041(b)(10) (emphasis added). The evidence does not support this factor, but this evidence is relevant to show intent to defraud a creditor.

Cowan and NWTD argue that factor (7), which states that "[t]he debtor removed or concealed assets," is not met because Cowan did not *physically* remove or conceal assets so that they are beyond the jurisdiction of the courts. Br. of Appellants at 31-33. This argument fails.

The argument hinges on the meaning of "remove or conceal," thus we begin by interpreting RCW 19.40.041(b)(7). The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent. *PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue*, 196 Wn.2d 1, 7, 468 P.3d 1056 (2020). This requires looking at the plain language of the statute, the context of the statute, any related statutory provisions, and the statutory scheme as a whole. *PeaceHealth St. Joseph*, 196 Wn.2d at 8. Only if the plain language is ambiguous can courts resort to aids of statutory interpretation. *See PeaceHealth St. Joseph*, 196 Wn.2d at 8. Otherwise, courts construe statutes to effect their purpose and to avoid unlikely or absurd results. *Thompson*, 168 Wn.2d at 750. When the plain language is clear, we may not add words where the legislature did not include them. *Nelson v. Dep't of Labor & Indus.*, 198 Wn. App. 101, 110, 392 P.3d 1138 (2017).

RCW 19.40.041(b)(7) requires the debtor to "remove or conceal assets." The "purpose of the UFTA is to provide relief for creditors whose collection on a debt is frustrated by the actions of a debtor to place the putatively satisfying assets *beyond the reach of the creditor*." *Thompson*, 168 Wn.2d at 750 (emphasis added). Interpreting subsection (b)(7) as the removal of assets from

the debtor to a different person or entity falls squarely within the purpose of the UFTA. Thus, we do not read into the statute language which the legislature did not contemplate. Moreover, a reading of the statute to require physical removal of real property leads to an absurd result. This would exempt all real property from the UFTA, which is clearly not the intent of the legislature. We hold that removal does not mean physical removal or removal outside the jurisdiction of the courts; instead, removal may include removal of assets outside of the creditors reach.[10]

This interpretation is consistent with how other courts analyzed factor (b)(7). *See e.g.*, *Lacey Marketplace Assocs. II LLC v. United Farmers of Alberta Coop.*, 720 Fed. Appx. 828, 831 (9th Cir. 2017) (holding that a debtor removed assets by placing them outside the creditor's reach); *In re Huber*, 493 B.R. 798, 815 (Bankr. W.D. Wash. 2013) ("the evidence establishes that by transferring the property into the Trust, the Debtor was attempting to remove the assets from the creditors' reach."). Thus, RCW 19.40.041(b)(7) refers to whether a debtor removed the asset from the creditor's reach.

Regarding factor (8), Cowan and NWTD argue that the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred. Cowan and NWTD argue that Cowan's years of uncompensated labor was the consideration for the transfer of 900 Hazel. The factor states that the *value* of the consideration received by NWTD was reasonably equivalent to the value of the asset transferred. RCW 19.40.041(b)(8). The record on appeal does not contain adequate evidence to determine whether the value of the labor Cowan contributed to NWTD is equivalent to the value of assets transferred. Thus, based on the

---

[10] Because this issue can be resolved using the term "removed," we do not address the statutory term "conceal."

findings, we cannot determine whether this factor has been met. Regardless, these factors are advisory, so the failure of this factor is not fatal to the trial court's legal conclusion of fraudulent conveyance.

Next, Cowan and NWTD argue that Cowan did not transfer substantially all assets to himself because NWTD had sufficient assets to pay its debts. The argument fails because NWTD did not have sufficient assets to pay its debts as evidenced by the default on the loan amount.

Although the Estate fails to show all the factors as listed in former RCW 19.40.041(b), the list of factors is not exhaustive. *See Clayton*, 168 Wn.2d at 69. And, while the trial court *can* consider the statutory factors, it is free to consider different or additional factors. Therefore, we hold that Cowan had actual intent to hinder, delay, or defraud the Estate.

Considering all the factors against the supported findings of fact, we hold that the findings of fact support the ultimate conclusion that Cowan had actual intent to defraud Robert.

2. *Remedy under the UFTA*

Cowan and NWTD argue in the alternative that the trial court erred in ordering remedies not authorized under the UFTA, namely requiring transfer of 900 Hazel to NWTD and holding Cowan personally liable for all assets traceable to NWTD. We disagree.

In an action for relief against a transfer under the UFTA, a creditor may avoid the transfer of an asset to the extent necessary to satisfy the creditor's claim, or he may attach or enjoin further disposition of the asset. Former RCW 19.40.071 (2010). Under the UFTA, an avoidable transfer is voidable but not void. *Assocs. Hous. Fin. LLC v. Stredwick*, 120 Wn. App. 52, 59, 83 P.3d 1032 (2004). An avoidable transfer is valid until it is nullified. *Assocs. Hous. Fin. LLC*,

120 Wn. App. at 59. In contrast, a void transfer is null from its inception. *Assocs. Hous. Fin. LLC*, 120 Wn. App. at 59. Thus, an avoidable transfer requires some action by the creditor to render the transfer void. *Assocs. Hous. Fin. LLC*, 120 Wn. App. at 60.

If a transfer is avoidable, "the creditor *may* recover judgment for the value of the asset transferred." Former RCW 19.40.081(b) (emphasis added). Thus, when a transfer is avoidable under the UFTA, the creditor may opt to recover the value of the fraudulently transferred property instead of voiding the transfer. Former RCW 19.40.081(b).

Here, the Estate's requested remedy was avoidance of the fraudulent transfer, which the trial court granted. The remedy is permissible under the UFTA. Thus, the trial court did not err in ordering that Cowan return 900 Hazel to NWTD and enjoining Cowan from further transferring or disposing of any assets traceable to NWTD.

Cowan and NWTD argue that the trial court erred in ordering Cowan to transfer 900 Hazel to NWTD because it should have ordered a monetary judgment for the value of 900 Hazel. However, former RCW 19.40.081(b) includes permissive, not mandatory, language: "the creditor *may* recover judgment for the value of the asset transferred." (emphasis added.) Thus, the trial court did not commit error.

Cowan and NWTD argue that the remedy should be limited to restrict the disposal or transfer of 900 Hazel, not all other assets traceable to NWTD. This argument fails.

Here, the amount of assets traceable back to NWTD, including 900 Hazel, is unknown. CP at 62 ("the specific amount [of the fraudulently transferred assets] has not been sufficiently established. Therefore, the court is unable to specify a dollar amount to be returned to the corporate shell."). Because the judgment against Cowan amounts to over $333,000, and the

value of 1000 Hazel is $159,430, we cannot limit the remedy without a proper accounting of the value of remaining assets. Therefore, the argument fails.

Additionally, RCW 23B.08.310 provides that a "director who votes for or assents to a distribution made in violation of RCW 23B.06.400 [, prohibiting distributions to shareholders that leave the corporation unable to pay its liabilities,] . . . is personally liable to the corporation for the amount of the distribution" made in violation of RCW 23B.06.400.

Here, Cowan's conveyance violated RCW 23B.06.310, thus the trial court did not err in holding Cowan personally liable for assets traceable to NWTD.

Thus, the trial court did not err in holding that Cowan fraudulently conveyed assets from NWTD to himself. The trial court properly allowed the Estate to void the transaction.

B.      *Piercing the Corporate Veil/Corporate Disregard*

Cowan and NWTD argue that the trial court erred in piercing the corporate veil. We agree.

The doctrine of "veil piercing" or "corporate disregard" allows the court to disregard a corporate entity and assess liability against the individual shareholder when (1) the shareholder used the corporation to intentionally violate or evade a duty owed to another, and (2) when it is necessary and required to prevent an unjustified loss to the injured party. *Columbia Asset Recovery Grp., LLC v. Kelly*, 177 Wn. App. 475, 486, 312 P.3d 687, 693 (2013). Abuse of the corporate form, including any form of "'manipulation of the corporation to the stockholder's benefit and the creditor's detriment,'" satisfies the first prong of the corporate veil test. *Plese-Graham, LLC v. Loshbaugh*, 164 Wn. App. 530, 546, 269 P.3d 1038 (2011) (quoting *Meisel v. M&N Modern Hydraulic Press Co.*, 97 Wn.2d 403, 410-11, 645 P.2d 689 (1982)). An

27

intentional use of the corporation to evade a duty owed to another is established when a creditor shows that "the liable corporation has been 'gutted' and left without funds" in order to avoid liability. *Morgan v. Burks*, 93 Wn.2d 580, 585, 611 P.2d 751 (1980). As to the second prong, the party seeking relief must have actually been harmed such that disregard of the corporate form is necessary to achieve justice. *See Plese-Graham, LLC*, 164 Wn. App. at 546. The party seeking to pierce the corporate veil bears the burden of proof. *Chadwick Farms Owners Ass'n v. FHC LLC*, 166 Wn.2d 178, 200, 207 P.3d 1251 (2009).

Here, the first prong is met. Cowan used NWTD to evade a statutory duty and a duty under the promissory note. Under RCW 23B.06.400(3)(a), a board of directors may not make any distributions of corporate assets if such distribution would result in the corporation's inability to pay its own debts. A director violates their duty if the distribution is made without good faith, ordinary prudence, and loyalty to the best interests of the corporation. RCW 23B.08.310(1); RCW 23B.08.300(1). RCW 23B.06.400(3)(a) creates a duty in the directors to ensure the corporation's ability to pay, and to not execute any distributions that may jeopardize that ability.

Cowan violated his duty under RCW 23B.06.400(3)(a) when he compromised NWTD's ability to pay its debt to Robert in favor of his personal gain. He transferred all assets and funds to himself, with the exception of 1000 Hazel, even though he knew that the value of the property would not pay the debt to Robert. He left NWTD with no other assets to pay its debt, thus it defaulted on its loan twice.

In addition, NWTD had a duty to repay the loan borrowed from Robert. It is undisputed that NWTD owed Robert a principal amount of $125,389 at the time of default. Before the

28

transfer of assets to Cowan, NWTD sold Kelso Self Storage, which resulted in a net profit of $325,000. Cowan transferred almost all of NWTD's assets, including cash funds, equipment, and properties to himself before the loan became due. Cowan undoubtedly used the corporate form to evade a duty to Robert. Thus, the first prong is met.

However, the second prong is not met. To meet the second prong, the Estate must show that Cowan's conduct resulted in an unjustified loss to the Estate. *Columbia*, 177 Wn. App. at 486. As part of that analysis, the Estate must show that piercing the corporate veil is necessary to achieve justice. *Superior Portland Cement, Inc. v. Pac. Coast Cement Co.*, 33 Wn.2d 169, 212, 205 P.2d 597 (1949), *Zander v. Larsen*, 41 Wn.2d 503, 511, 250 P.2d 531 (1952).

Here, the evidence certainly established unjustified loss to the Estate. Nonetheless, the Estate fails to show that piercing the corporate veil was necessary to achieve justice. Here, the trial court ordered remedies for the fraudulent conveyance of 900 Hazel. Although we cannot determine the exact amount of remedies to be awarded, the Estate fails to show that the remedies are not sufficient such that piercing the corporate veil and reaching for Cowan's personal assets would be necessary. Thus, the Estate fails to meet its burden of showing the second prong.

The trial court awarded, and we affirm, a judgement for fraudulent conveyance for all of the transferred assets, and foreclosure of 1000 Hazel in favor of the Estate. The Estate has not shown that this is insufficient to achieve justice, thus, the Estate fails to meet its burden. The necessity of piercing the corporate veil is not supported by substantial evidence—the trial court did not find, nor does the evidence support, that NWTD would not be able to pay the Estate for the full amount owed after the judgment.

Thus, the trial court erred in piercing the corporate veil because it was not necessary to do so.

C.      *Lis Pendens*

1.      *The 2016 and 2020 Lis Pendens*

Cowan and NWTD argue that the trial court erred in dismissing their 2016 motion to cancel the lis pendens "because Suess's claim for fraudulent conveyance was not an action affecting title." Br. of Appellants at 64. Cowan and NWTD further argue that the court erred again in denying their 2020 motion to cancel the lis pendens because the action had concluded and the final judgment had been complied with and not stayed pending appeal." Br. of Appellant at 67. We disagree.

We review the trial court's order granting a motion to cancel a lis pendens for an abuse of discretion. *Guest v. Lange*, 195 Wn. App. 330, 335, 381 P.3d 130 (2016). A trial court abuses its discretion when it grants or denies a motion on untenable grounds or for untenable reasons. *Guest*, 195 Wn. App. at 335. Untenable reasons include errors of law. *Guest*, 195 Wn. App. at 335.

A "lis pendens" is an "instrument having the effect of clouding the title to real property." RCW 4.28.328(1)(a). Either party to an action affecting title to real property, or a receiver of the real property, may file a notice of lis pendens with the county auditor. RCW 4.28.320. This filing is constructive notice to third parties that the title may be clouded. RCW 4.28.320. "In Washington, lis pendens is procedural only; it does not create substantive rights in the person recording the notice." *Guest*, 195 Wn. App. at 335 (quoting Beers,137 Wn. App. at 575, 154 P.3d 277) (internal quotes omitted).

RCW 4.28.320 provides that the court may, at its discretion, cancel a lis pendens when three conditions are met: "(1) the action must be settled, discontinued, or abated, (2) an aggrieved person must move to cancel the lis pendens, and (3) the aggrieved person must show good cause and provide proper notice." *Guest*, 195 Wn. App. at 336. "If those conditions are met, the statute provides the court discretion to cancel the lis pendens." *Guest*, 195 Wn. App. at 336.

The conditions contemplate a final decision in a case or complete abandonment of the claim by the parties. *Guest*, 195 Wn. App. at 337-38. We have previously analyzed RCW 4.28.320 to mean that "a notice of appeal, by transporting a case from a trial court to a court of appeals, renders the action in that case not 'settled, discontinued, or abated.'" *Guest*, 195 Wn. App. at 340 (quoting RCW 4.28.320). We reasoned that where a notice of appeal follows a final judgment, the *action* is not final for purposes of discontinuing a lis pendens. *Guest*, 195 Wn. App. at 340. And, RCW 4.28.320 requires that an *action* be final, not a judgment.

Here, the trial court denied the defendants' motion to cancel lis pendens on 900 Hazel in December 2020. The defendants had already filed a notice of appeal to this court in July 2020. Because the action was pending appeal, the action was not final and the trial court did not have discretion to cancel the lis pendens. As such, the trial court did not err.

Cowan and NWTD cite to *Beers v. Ross*, 137 Wn. App. 566, 575, 154 P.3d 277 (2007) to support their position that the trial court can properly cancel a lis pendens after a final judgment that has not been stayed on appeal. However, the *Guest* court already declined to follow the reasoning in *Beers*, and we find no reason to depart from *Guest.*

In *Beers*, we summarily held that the trial court did not abuse its discretion in cancelling the lis pendens after a notice of appeal "because the Beerses did not request a stay." 137 Wn. App. at 575. In *Guest*, we held that *Beers*'s holding is contrary to the plain language of RCW 4.28.320. *Guest*, 195 Wn. App. at 340. In *Guest*, we interpreted the plain language of RCW 4.28.320. 195 Wn. App at 337-38. As a result, it held that RCW 4.28.320 is not satisfied by a final judgment at the trial level; instead, an action must be final as to resolve the dispute between the parties. *Guest*, 195 Wn. App at 338-41. Thus, a decision is not final simply because a judgment was rendered at the trial level. And, we follow the holding in *Guest*.

The trial court did not err in refusing to cancel the lis pendens.

Cowan and NWTD argue that the trial court should have cancelled the lis pendens because it was improperly entered. More specifically, Cowan and NWTD argue that the lis pendens is improper because an action for fraudulent conveyance does not "affect title." Br. of Appellants at 64. We disagree.

Cowan and NWTD base their argument on the false assumption that the UFTA does not authorize the trial court to void the transfer of fraudulently conveyed assets. However, as established above, the Estate is entitled to avoid, or void, the fraudulently conveyed assets. Fraudulent conveyance may prompt the court to order the transaction void, thus affecting title. *See Assocs. Hous. Fin. LLC*, 120 Wn. App. at 60 (stating that a creditor may void a fraudulent transfer). Thus, this action undoubtedly affects title.

2.      *Damages*

Cowan and NWTD argue that the trial court erred in denying Cowan and NWTD's claim for an offset for actual damages from the loss of the 2016 sale to Butch Henry. The argument fails.

RCW 4.28.328(2) states that if a party *prevails* on a motion to cancel the lis pendens in an action not affecting title, the claimant is liable to the party for actual damages and reasonable attorney fees incurred in cancelling the lis pendens. And, RCW 4.28.328(3) states that "a claimant is liable to an aggrieved party *who prevails* in defense of the action in which the lis pendens was filed for actual damages caused by filing the lis pendens, and in the court's discretion, reasonable attorneys' fees and costs incurred in defending the action." (Emphasis added.) Because Cowan and NWTD do not prevail in defending the action or in cancelling the lis pendens, they are not entitled to damages.

## ATTORNEY FEES

Cowan and NWTD request attorney fees pursuant to RCW 4.28.328(2) and (3), the terms of the promissory note, and the deed of trust. The Estate requests attorney fees under the promissory note and deed of trust and RCW 4.28.320. We deny Cowan and NWTD's request, but award the Estate reasonable attorney fees on appeal.

RCW 4.28.328(2) entitles the party who prevails on a motion to cancel the lis pendens in an action not affecting title to actual damages and reasonable attorney fees incurred in cancelling the lis pendens. Similarly, RCW 4.28.328(3) entitled a party who prevails in defense of the action in which the lis pendens was filed for reasonable attorney fees and costs incurred in defending the action.

The promissory note states "the prevailing party . . . shall be entitled to recover its reasonable attorney fees and costs . . . from the non-prevailing party." CP at 120. "The Deed of Trust requires payment of 'all costs, fees and expenses . . . incurred in enforcing the obligation secured and attorney's fees actually incurred as provided by statute.'" CP at 120.

Cowan and NWTD are not entitled to attorney fees under either RCW 4.28.328(2) or RCW 4.28.328(3). Under subsection (2), Cowan and NWTD are not entitled to attorney fees because they are not prevailing parties as is required under subsections (2) and (3) for an award for attorney fees. Thus, Cowan and NWTD are not entitled to attorney fees under RCW 4.28.328.

Similarly, the promissory note and the deed provide for reasonable attorney fees to the prevailing party. In this case, the Estate is the prevailing party, and is thus entitled to reasonable attorney fees on appeal.

## CONCLUSION

We hold that most of the trial court's findings are supported by substantial evidence, and those findings support the trial court's conclusions of law that Cowan committed fraudulent conveyance. In addition, we hold that the remedies imposed by the trial court were authorized by the UFTA. We also hold that the trial court erred in piercing the corporate veil, but it did not err in not cancelling the lis pendens. Lastly, we award the Estate attorney fees on appeal.

Accordingly, we affirm in part, reverse in part, and remand to the trial court to amend the judgment in accordance with this opinion.

No. 55041-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Maxa, J.

Price, J.